GEORGE L. WHITMAN & another *vs.* HARUM MERRILL.

Suffolk.    March 18. — July 29, 1878.    COLT & AMES, JJ., absent.

A judgment in replevin for the plaintiff does not necessarily show that the taking was unlawful.

If the rescission of a sale, voidable through the purchaser's fraud, is made after an attachment in good faith of the goods by a creditor of the purchaser and immediately before a replevin of the goods by the seller, the detention of the goods by the attaching officer is but momentary, for which he is liable only for nominal damages.

REPLEVIN of a lot of woollen cloths. The defendant was defaulted, and the parties subsequently agreed that the default should stand and the defendant take part in the assessment of damages. At the hearing, before *Colburn*, J., the following facts appeared :

The plaintiffs were commission merchants in the city of New York, and Harvey B. Wilmot was a manufacturer and dealer in ready-made clothing at store No. 263 Washington Street, Boston, his establishment consisting of a large room on the street level, one or two chambers over it, and a large room, up two or three stories in a building, in the rear of the store, but which communicated with the store by an iron door at the back of the main store, and a long flight of stairs. This large room was used by Wilmot as a cutting room, and there was no access to it except from the main store, by the iron door and stairs.

On July 22, 1876, the plaintiffs sold to Wilmot certain woollen cloths, amounting to $2628.70, which were received by Wilmot, on July 24, and immediately placed in his cutting room, and his

cutters proceeded to cut these goods, with others, into garments, and continued at the work until Saturday evening, July 29, 1876, when nearly or quite all the cloths were cut up, or partially cut up, into garments.

In the afternoon of Friday, July 28, the defendant, a deputy sheriff, having a writ in which one Hawley and another were the plaintiffs and Wilmot the defendant, went to the store of Wilmot and made an attachment. There were at that time, in the principal room of the store, goods worth $40,000 or $50,000. Merrill arranged with Wilmot that his business should not be interrupted by the attachment, except that no goods should be carried away, but such as might be sold and the proceeds turned over to Merrill. Merrill put a keeper in charge of the store, who remained in the principal room, with instructions to allow no goods to be removed from the store, except such as should be sold and the proceeds paid over to him, but further than that, not to interfere with Wilmot's operations or business. Merrill, in his return on the writ, under date of July 28, 1877, stated that he "this day attached as the property of the within named Harvey B. Wilmot, the stock of clothing and other goods and chattels, and the fixtures, including an iron safe, in store No. 263 Washington Street, in said Boston, and placed the same in charge of keepers."

On August 2, 1876, the plaintiffs, contending that the cloths had been fraudulently purchased from them, brought this replevin writ, and on that day a deputy sheriff made service thereof and took from the cutting room most or all of the cloths, nearly or quite all of which had been cut up, or partly cut up, for garments.

Prior to the service of the replevin writ, neither the defendant nor his keeper knew of the existence of the plaintiffs' cloths, or of the cutting room, or of the means of access thereto, though the keeper had seen the employees of Wilmot pass in and out through the room where he was on Friday afternoon and Saturday, but what work they were engaged in, he did not know. The defendant had no information until August 2, when the goods were replevied, that any goods in or about the establishment belonged to any one but Wilmot, and no demand was made upon him until the service of the writ. When the replevin writ

was served, Merrill agreed upon the value of the goods for the purpose of fixing the amount of the replevin bond.

It appeared in evidence that the market or salable value of the plaintiffs' cloths was greatly reduced by cutting them up for garments, and the plaintiffs contended that the defendant was liable in this action for all the damage done to the goods by cutting after he made the attachment on July 28. The defendant contended that he was only liable for nominal damages. There was no evidence of any depreciation of the goods or of damage done to them after the attachment except by the cutting.

The judge found that the cutting, which was done after the attachment, caused a depreciation in the value of the plaintiffs' cloths amounting to $235, and that damages should be assessed in that sum, with interest from August 2, 1876, if the defendant was liable for the depreciation so caused, under the above facts. But the judge, being of opinion that the facts did not render the defendant liable for the depreciation and damage caused by the cutting, assessed damages in the sum of one dollar. The plaintiffs alleged exceptions.

*S. Hoar,* for the plaintiffs. It was admitted, by the default, that before the date of the writ the defendant had unlawfully taken the plaintiffs' cloths, and was then in the unlawful possession of them. The exceptions show that this unlawful taking was on July 28, 1876, on which day the defendant attached the goods as the property of one Wilmot. " Any deterioration of the goods, while in possession of the defendant after the unlawful taking, is a proper subject of damages." *Gordon* v. *Jenney,* 16 Mass. 465, 470. *Clark* v. *Martin,* 120 Mass. 543. Morris on Replevin, (2d ed.) 193. Sedgwick on Damages, (6th ed.) 629, & notes.

If the plaintiff in replevin proves the value of the goods at the time of the unlawful taking, and their diminished value at the time when they were taken on the replevin writ, he has thereby, if he succeeds on the merits, shown his title to the amount of the depreciation as damages; and it is of no consequence whether the depreciation is from natural or from accidental causes, whether the goods were injured by lightning or by the prudent endeavor of the wrongdoer to preserve them, or by the unauthorized acts of strangers. It is the fact of damage that

gives the plaintiff his title thereto, and not the acts or means by which it was inflicted. The ruling was therefore erroneous.

*L. W. Howes*, for the defendant.

LORD, J. A fallacy of the plaintiffs is the assumption that a judgment for the plaintiff in replevin necessarily implies an unlawful taking of the replevied goods by the defendant. This is not so. Replevin lies for an unlawful detention, although the original taking was lawful.

In this case, there is nothing to show the taking by the defendant to have been unlawful. The plaintiffs sold and delivered to Wilmot a bill of goods, being those replevied. A stranger could treat the goods thus delivered to Wilmot, while in his hands, as Wilmot's; could purchase them, could perform labor upon them, and a creditor of Wilmot might attach them as his. The plaintiffs, however, contend that the sale to Wilmot was voidable, and we are to assume it as voidable by reason of Wilmot's fraud. But, as to third persons dealing with the property in good faith without knowledge of the fraud, the sale is good until rescinded by the plaintiffs. This rescission did not take place till after the attachment; nor does it appear to have been till immediately before the replevin. No detention of the goods by the defendant after such rescission is shown, except a momentary one; and for that nominal damages only were properly assessed.

*Exceptions overruled.*